UNITED STATES ex rel. COSTELLO v. McDERMITT.

District Court, D. New Jersey.
Dec. 20, 1937.

George R. Sommer, of Newark, N. J., and Maurice Krivit, of Jersey City, N. J., for relator.

John J. Quinn, U. S. Atty., of Red Bank, N. J., and Thorn Lord, Asst. U. S. Atty., of Trenton, N. J., for respondent.

FORMAN, District Judge.

An attempt was made to rob the Claymont Trust Company of Claymont, Del., at about 11 o'clock in the morning of November 26, 1937, by several men, who, failing in their effort, fled the scene in a grey De Soto sedan automobile bearing a Pennsylvania license. A witness testified that he followed the bandits' automobile until it came close to the state line between Delaware and Pennsylvania, notwithstanding that his car was fired upon by the rob-

bers, but he lost the grey sedan as it maneuvered a traffic intersection and escaped him into Pennsylvania. Another witness testified that he recognized the grey sedan as an automobile which passed his car in a northerly direction in Pennsylvania; that he was also passed by a Ford light delivery black truck; that outside of Chester, Pa., the latter car was stopped long enough to permit a man to board it, and later passed him again. Another witness testified that he saw the grey sedan and the black truck stop at the property of the Sun Oil Company at South Chester, Pa., where there was a transfer of one or more men from the grey sedan to the black truck. It was shown that the grey sedan was abandoned at this spot. No one identified any of the persons—only the automobiles were identified. Pursuant to an alarm given describing the automobile, a New Jersey state policeman apprehended the relator driving the identified black truck in Woodbridge, N. J., some seventy-six miles from Chester, Pa., at about 2:45 of the afternoon of that day.

Upon his arraignment his removal was sought to the District of Delaware on a complaint charging him with violation of 12 U.S.C.A. § 588b (attempted robbery of a bank insured under the Federal Deposit Insurance Act, 12 U.S.C.A. § 264). The relator denied that he had been in Delaware at the time of the attempted robbery and asserted he was in Hoboken, N. J., at that time. He was committed by a United States Commissioner to await removal upon the facts substantially as above stated. A writ of habeas corpus was allowed and on the argument thereof with the relator's consent the government offered pertinent testimony as follows: A witness testified that he drove his car up beside an automobile at the railroad station in Claymont, Del., at 1:45 of the morning of the attempted robbery and as the lights of his car flashed on the other car he saw a man in it with a "long nose" whom he recognized and identified in the courtroom as the relator. There was also introduced the testimony of the New Jersey state policeman to the effect that when relator was taken to the state police station near Woodbridge he presented an automobile registration card and driver's license. While the state policeman was making a telephone call, relator tore up the registration and license cards and dashed out of the police station. He was pursued by the policeman and recaptured. It developed that the registration and license cards were made out in a fictitious name, at first given by the relator as his own.

There was no evidence before the Commissioner to support his commitment of the relator to await removal.

The supplementary testimony proved (1) that he was identified as having been in the town where the robbery was attempted some nine or ten hours before the event, (2) his presentation of automobile certificates whereon the names were fictitious, and (3) his attempt to destroy these and to escape after arrest.

An indictment of the relator in Delaware would have tended to establish proof of probable cause for his removal (United States ex rel. Kassin v. Mulligan, U. S. Marshal, et al., 295 U.S. 396, 55 S.Ct. 781, 79 L.Ed. 1501), but the relator has not been indicted there so that the full burden of such establishment rests upon the government's proofs. These do not rise above suspicious circumstances. The fact that the relator was in the town of the attempted robbery nine or ten hours before that event; that he was discovered driving the car to which it is known the bandits transferred on the afternoon of the same day in Woodbridge, N. J.; that when he was apprehended he gave automobile registration and license certificates made out in a fictitious name, which he attempted to destroy, and sought to flee from his captor —all these circumstances arouse suspicion as to the connection of the relator with this attempted crime. But do they singly or collectively lay the basis for the fact-accusation that he engaged in the attempted robbery? Such an inference is separated from any proven fact by a bottomless chasm over which no legitimate bridge exists. It is purely a guess. Perhaps there is more substance to the speculation that his part was to drive the black truck so that the bandits would make the transfer from their original grey sedan. If this is so, the black truck is not identified as ever having been in Delaware. It was first seen in Pennsylvania, and again, we are obliged to guess whether the relator was an aider and abettor in the attempted crime in Delaware or an accessory after the fact in Pennsylvania. All of these hazards become excursions into a realm of speculation too flimsy to convince the court that there is probable cause to believe that the relator is guilty of the offense charged.

"Probable cause means more than opportunity to commit crime, or presence in a particular place. It must be more than surmise or suspicion. There must be some tangible fact or incident which will support a judicial act, something which invokes discrimination of judicial discretion. The facts and circumstances before the court must be such as to warrant a man of prudence and caution in believing that the defendant is guilty." United States v. Johnston, D.C., 292 F. 491, 493.

The relator is held in custody without warrant in law, and will be discharged.